Sergio Fernando
**NORIEGA–SANDOVAL,**
Petitioner,

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 89–70062.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1990.

Decided Aug. 13, 1990.

Howard R. Harris, Harris, Harris & Harris, San Diego, Cal., for petitioner.

Stewart Deutsch, Civ. Div., Dept. of Justice, Washington, D.C., for respondent.

Before HUG, SCHROEDER and HALL, Circuit Judges.

PER CURIAM:

Sergio Fernando Noriega–Sandoval seeks review of an order of the Legalization Appeals Unit ("LAU") affirming the Western Regional Processing Facility's denial of his application for adjustment of status to that of temporary resident under the Immigration Reform and Control Act of 1986 ("IRCA"). 8 U.S.C. § 1255a (1989).

We dismiss Noriega–Sandoval's petition for review because we lack jurisdiction under 8 U.S.C. § 1255a(f)(4)(A) (1989) to review the LAU's denial of Noriega–Sandoval's application for adjustment in status at this time; subsection 1255a(f)(4)(A) permits appellate review of denials of adjustment to temporary resident status solely within the context of our review of orders of deportation.

## FACTS AND PROCEEDINGS BELOW

Noriega–Sandoval claims to have illegally entered the United States in 1972. He was deported on November 6, 1984 and subsequently returned to this country illegally.

On August 6, 1987, Noriega–Sandoval applied for temporary resident status under 8 U.S.C. § 1255a.[1] The INS Western Regional Processing Facility denied this application, holding that Noriega–Sandoval's November 6, 1984 departure from the United States, under an order of deportation, interrupted the required period of continuous residence, rendering him ineligible under 8 U.S.C. § 1255a(g)(2)(B)(i) (1989) for an adjustment of status to temporary resident.[2] The LAU affirmed this decision.

Noriega–Sandoval petitions for review of the LAU's decision. He claims that the LAU erred in denying him an adjustment to temporary resident status because his prior deportation was due to ineffective assistance of counsel. He alleges that his attorney failed to notify him in 1984 of the deportation order and of the 30–day period in which he was to voluntarily depart. He claims that had he departed voluntarily, he would not have departed under an order of deportation and hence, could satisfy IRCA's requirement of continuous residence since 1982. *See* 8 U.S.C. §§ 1255a(a)(2), (g)(2)(B)(i).

Noriega–Sandoval asserts that this court has jurisdiction under 8 U.S.C. § 1255a(f)(4), which provides for judicial review of determinations respecting an application for adjustment of status to tempo-

---

1. This provision requires that for eligibility for temporary resident status, an alien must establish, among other things, that he or she "entered the United States before January 1, 1982," 8 U.S.C. § 1255a(a)(2)(A); has thereafter "resided continuously in the United States in an unlawful status," *id.;* and has been "physically present in the United States since November 6, 1986." 8 U.S.C. § 1255a(a)(3)(A).

2. 8 U.S.C. § 1255a(g)(2)(B)(i) provides:

> an alien shall not be considered to have resided continuously in the United States, if, during any period for which continuous residence is required, the alien was outside the United States as a result of a departure under an order of deportation.

rary resident. In the alternative, he seeks habeas corpus relief pursuant to 28 U.S.C. § 2241 (1989).

## DISCUSSION

The issue of first impression presented is whether we have jurisdiction to entertain Noriega–Sandoval's petition for review under 8 U.S.C. § 1255a(f)(4)(A), which governs judicial review of temporary resident adjustment determinations. Congress enacted this subsection in 1986 as part of IRCA, the Act granting amnesty to certain illegal aliens. Subsection 1255a(a) allows for the adjustment of status of an alien to that of an alien lawfully admitted for temporary residence if the alien meets certain requirements, including continuous unlawful residence since 1982 and continuous physical presence since November 6, 1986. 8 U.S.C. §§ 1255a(a)(2), (3).

Subsection 1255a(f) provides for administrative and judicial review of determinations respecting an application for adjustment to temporary resident status. The provision specifically states "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." 8 U.S.C. § 1255a(f)(1). Subsection 1255a(f)(3) calls for a single level of administrative appellate review, which the LAU provides. 8 U.S.C. § 1255a(f)(3)(A); 8 C.F.R. § 245a.2(p) (1989).

The key statutory language which we must interpret is contained in subsection (f)(4)(A) of § 1255a. It is entitled "Limitation to review of deportation," and provides "[t]here shall be judicial review of such a denial [of adjustment of status to temporary resident] *only* in the judicial review of an order of deportation under section 1105a of this title." 8 U.S.C. § 1255a(f)(4)(A) (emphasis added).

We have held that "[t]he plain meaning of a statute is controlling absent a clearly expressed congressional intention to the contrary." *United States v. Hoffman*, 794 F.2d 1429, 1432 (9th Cir.1986); *see Moorhead v. United States*, 774 F.2d 936, 941 (9th Cir.1985) ("It is assumed that the legis-

lative purpose is expressed by the ordinary meaning of the words used....") (citations omitted). The plain language of subsection 1255a(f)(4)(A) clearly expresses Congress' intent to permit appellate review of denials of adjustment of status to temporary resident solely within the context of our review of orders of deportation. *Cf. Randall v. Meese*, 854 F.2d 472, 480–82 (D.C.Cir.1988) (applicant for adjustment of status to an alien lawfully admitted for permanent residence under 8 U.S.C. § 1255(a) could receive judicial review of a denial of such an application solely at the conclusion of the administrative deportation process), *cert. denied*, —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 694 (1989).

The legislative history of subsection 1255a(f)(4) reflects that Congress adopted this section as a choice between the Senate version, which prohibited any judicial review of legalization determinations, and the House version, which permitted review within the context of deportation orders. S.Rep. No. 132, 99th Cong., 2nd Sess. 48 (1985); H.Rep. No. 682(I), 99th Cong., 2nd Sess. 74 (1986), U.S.Code Cong. & Admin. News 1986, 5649, 5678. The Senate Committee on the Judiciary explained the Senate's version of subsection (f) as follows:

It is for the purpose of helping to ensure reasonably prompt final determinations that subsection (f) provides that there will be no judicial review of a decision or determination made with respect to the legalization program. Moreover, an alien denied adjustment of status under the legalization program may not raise a claim concerning such adjustment in *any* proceeding of the United States or any State involving the status of such alien.

S.Rep. No. 132, 99th Cong., 2nd Sess. 48 (1985) (emphasis added). In contrast, the House Committee on the Judiciary gave the following explanation of the House version of the legalization review provision:

The bill provides for limited administrative and judicial review of denials of applications for legalization ... When the administrative review is exhausted and also yields a negative decision, and when the applicant is in a deportation proceed-

ing (but not an exclusion proceeding), the applicant can appeal a negative decision within the context of judicial review of a deportation order.

H.Rep. No. 682(I), 99th Cong., 2nd Sess. 74 (1986), U.S.Code Cong. & Admin.News 1986, 5678. Congress ultimately passed the House version of subsection (f). H.Conf.Rep. No. 1000, 99th Cong. 2nd Sess. 85 (1986), U.S.Code Cong. & Admin.News 1986, 5649.

In light of both the language of subsection 1255a(f)(4)(A) and that provision's legislative history, we hold that we lack jurisdiction to review the LAU's denial of an alien's application for adjustment to temporary resident status under IRCA, except in the context of a review of an order of deportation. Here, Noriega–Sandoval merely challenges the denial of his application to have his status adjusted rather than a deportation order based upon such a denial. We therefore do not have jurisdiction to review the LAU's denial of Noriega–Sandoval's application at this time.[3]

In the alternative, Noriega–Sandoval claims that we have jurisdiction under 28 U.S.C. § 2241(c)(3), which provides habeas corpus relief to one who "is in custody in violation of the Constitution or laws or treaties of the United States." Subsection 2241(a) states that "[w]rits of habeas corpus may be granted by the Supreme Court, any Justice thereof, the district courts and any Circuit Judge within their respective jurisdictions." 28 U.S.C. § 2241(a). As Judge Friendly noted in *In re Mackin*, 668 F.2d 122, 137 (2d Cir.1981), "[a] court of appeals is conspicuously absent from this list." We therefore lack jurisdiction as a court to consider a petition for a writ of habeas corpus as an original matter. *In re Berry*, 221 F.2d 798 (9th Cir.1955); *M. Meek v. State of California*, 220 F.2d 348 (9th Cir.1955); *Jensen v. Teets*, 219 F.2d 235 (9th Cir.1955); *see also Mackin*, 668 F.2d at 137; *Zimmerman v. Spears*, 565 F.2d 310, 316 (5th Cir.1977); Fed.R.App.P.

22, Notes of Advisory Committee on Appellate Rules.

DISMISSED.

---

**3.** The jurisdictional question raised here concerns the merits of an individual application. For this reason, this case is dissimilar to the class or group challenge concerning executive branch compliance with immigration law which was presented in *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555 (11th Cir.1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 2584, 110 L.Ed.2d 265 (1990).